UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JANLEENA L. HARRISON,

         Plaintiff,

v.                 Case # 18-CV-6715-FPG
                 DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

         Defendant.

**INTRODUCTION**

Plaintiff Jaleena L. Harrison brings this action pursuant to Titles II and XVI of the Social Security Act seeking review of the denial of her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").

Plaintiff protectively applied for DIB and SSI on August 23, 2012, alleging disability based on scoliosis, arthritis, fibromyalgia, depression, and anxiety. Tr.[1] 540, 547, 605 After the Social Security Administration ("SSA") denied her application, Plaintiff testified at a hearing before an Administrative Law Judge ("ALJ") on April 2, 2014. Tr. 50-114. On September 20, 2014, the ALJ issued an unfavorable decision. Tr. 249-67. After the Appeals Council granted Plaintiff's request for review, Plaintiff testified at further hearings before the ALJ on September 14, 2016 and May 26, 2017. Tr. 268-72, 10-49, 115-69. On November 14, 2017, the ALJ issued an unfavorable decision. Tr. 273-302. After the Appeals Council denied Plaintiff's request for review, the SSA's decision became final and Plaintiff appealed it to this Court. Tr. 1-6; ECF No. 1. This Court has jurisdiction to review the SSA's final decision pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

---

[1] "Tr." refers to the administrative record in this matter. ECF No. 8.

1

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 14, 16. For the reasons that follow, Plaintiff's Motion for Judgment on the Pleadings (ECF No. 14) is DENIED, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 16) is GRANTED, and Plaintiff's Complaint (ECF No. 1) is DISMISSED WITH PREJUDICE.

**LEGAL STANDARD**

To determine whether a claimant is disabled within the meaning of the Social Security Act, an ALJ follows a five-step sequential evaluation: the ALJ must determine (1) whether the claimant is engaged in substantial gainful work activity; (2) whether the claimant has any "severe" impairments that significantly restrict her ability to work; (3) whether the claimant's impairments meet or medically equal the criteria of any listed impairments in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and if they do not, what the claimant's residual functional capacity ("RFC") is; (4) whether the claimant's RFC permits her to perform the requirements of her past relevant work; and (5) whether the claimant's RFC permits her to perform alternative substantial gainful work which exists in the national economy in light of her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *Parker v. City of New York*, 476 U.S. 467, 470-71 (1986); *see also* 20 C.F.R. §§ 404.1520, 416.920.

When a district court reviews a final decision of the SSA, it does not "determine de novo whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Rather, the court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3).

"Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted).

## DISCUSSION

### I. The ALJ's Decision

The ALJ analyzed Plaintiff's benefits application using the process described above. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since May 26, 2012, her amended alleged onset date. Tr. 280. At step two, the ALJ found that Plaintiff has the following severe impairments: fibromyalgia, scoliosis and chronic back pain, migraines, depression, anxiety, panic attack disorder, and mild cannabis use disorder. Tr. 280. At step three, the ALJ found that none of Plaintiff's impairments meet or medically equal the criteria of any Listings impairment and determined that Plaintiff retains the RFC to perform sedentary work with additional restrictions. Tr. 281-299. Specifically, the ALJ found that Plaintiff requires a sit/stand option that allows her to change position every 60 minutes for up to five minutes; that she cannot climb ropes, ladders or scaffolds; that she cannot balance on narrow, slippery, or moving surfaces; that she can occasionally stoop, crouch, kneel, crawl, and climb stairs; that she can frequently handle and finger bilaterally; that she can adjust to occasional changes in her work setting; that she can work to meet daily goals but cannot maintain an hourly, machine-driven, assembly line production rate; and that she requires up to three additional short, less-than-five-minute, unscheduled breaks in addition to her normally scheduled breaks. Tr. 283. At step four, the ALJ found that Plaintiff is not able to perform any past relevant work, and at step five, she found that Plaintiff can adjust to other work that exists in significant numbers in the national economy. Tr. 299-301. Accordingly, the ALJ found that Plaintiff is not disabled. Tr. 302.

**II. Analysis**

Plaintiff makes two arguments on appeal. First, she argues that the ALJ improperly discounted her treating physicians' opinions as to the severity of her fibromyalgia based on a lack of objective evidence, even though fibromyalgia does not manifest itself through objective evidence. Second, she argues that the ALJ judged her character instead of evaluating whether her symptoms were consistent with the objective medical evidence and other evidence. The Court disagrees with both arguments and finds that remand is not warranted.

**A. The ALJ's Evaluation of the Opinion Evidence Regarding Plaintiff's Fibromyalgia**

Plaintiff first argues that the ALJ "effectively required 'objective evidence' for a disease that eludes such measurement," *Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003), and that this misunderstanding of fibromyalgia tainted the ALJ's evaluation of Plaintiff's treating physicians' opinions.

"[U]nder Second Circuit precedent, a 'perceived lack of objective evidence' is not a 'good reason' for rejecting a treating physician's opinion regarding the nature and severity of fibromyalgia because that impairment is one for which 'there are no objective tests which can conclusively confirm the disease.'" *Vanice v. Comm'r of Soc. Sec.*, No. 17-CV-1263, 2019 U.S. Dist. LEXIS 98655, at *13 n.2 (W.D.N.Y. June 12, 2019) (quoting *Green-Younger*, 335 F.3d at 108); *see also Brown v. Comm'r of Soc. Sec.*, No. 3:16-CV-0941 (WBC), 2017 U.S. Dist. LEXIS 110248, at *17 (N.D.N.Y. July 17, 2017) ("[R]ejecting a treating source's opinion regarding the functional limitations of a fibromyalgia plaintiff based only on a perceived lack of objective evidence, or requiring medical evidence beyond that needed for a diagnosis, can be legal error."). Indeed, claimants "with fibromyalgia may experience severe and unremitting musculoskeletal pain, accompanied by stiffness and fatigue due to sleep disturbances, yet have normal physical

examinations, e.g., full range of motion, no joint swelling, normal muscle strength and normal neurological reactions." *John v. Berryhill*, No. 1:17-CV-00963 (JJM), 2019 U.S. Dist. LEXIS 91533, at *11 (W.D.N.Y. May 31, 2019).

However, the "[m]ere diagnosis of fibromyalgia without evidence as to the severity of symptoms and limitations does not mandate a finding of disability[.]" *Stephanie Prince v. Astrue*, 514 F. App'x 18, 20 (2d Cir. 2013) (summary order). And "the opinion of a treating physician on the nature or severity of a plaintiff's impairments is binding only if it is supported by medical evidence and not contradicted by substantial evidence in the record." *Brown*, 2017 U.S. Dist. LEXIS 110248, at *17. "When, as in this case, a plaintiff alleges pain that exceeds the objectively verifiable evidence, the ALJ must consider several evaluative factors, including daily activities, medication, and causes of the pain, in order to determine the extent to which the pain affects the claimant's functional capabilities." *Melissa S. v. Comm'r of Soc. Sec.*, No. 1:17-CV-995 (ATB), 2019 U.S. Dist. LEXIS 6212, at *19-20 (N.D.N.Y. Jan. 14, 2019).

The Court finds that the ALJ properly applied these principles here. She did not reject Plaintiff's treating physicians' opinions based solely on a lack of objective evidence, rather, she found that the opinions were internally inconsistent, unsupported, or contradicted by other evidence.

For example, two of Plaintiff's treating sources, Dr. Esther Bauscher and Nurse Practitioner Luna Deveau, completed identical medical source statements indicating that Plaintiff was totally unable to work for six months.[2] Tr. 870, 874. At the same time, however, both of these sources opined that Plaintiff had no limitations in the ability to walk or sit during the workday: specifically,

---

[2] This portion of the opinions supported the ALJ's determination that Plaintiff could perform sedentary work. Further, the ALJ was entitled to reject the portion of the opinions indicating that Plaintiff could not work for six months, because a determination that a claimant can or cannot work is reserved for the Commissioner. 20 C.F.R. § 416.927(d).

5

they opined that Plaintiff could walk for more than four hours and sit for more than four hours in an eight hour workday. Tr. 872, 876. Additionally, Nurse Deveau indicated in a treatment note that Plaintiff "insists she is totally disabled which is contrary to our opinion" and that "her exam findings do not support total disability." Tr. 904. Dr. Bauscher and Nurse Deveau also opined that Plaintiff was very limited in the ability to push, pull, and bend, Tr. 872, 876, but Nurse Deveau indicated in a treatment note that Plaintiff was able to move about the exam room freely without any discomfort and could bend at the waist with only slight discomfort. Tr. 903. The ALJ discounted these opinions not because they lacked objective evidence, but because they were internally inconsistent and inconsistent with the providers' own treatment notes.

Another one of Plaintiff's treating physicians, Dr. Tiffany Pulcino, opined that Plaintiff could not work for more than four hours a day. Tr. 886-88. She completed a subsequent opinion indicating that Plaintiff could not even work for two hours a day and could never lift more than 20 pounds occasionally or 10 pounds frequently. Tr. 922-26. Similarly, treating physician Dr. Christine Osborne opined that Plaintiff could not work for more than two hours a day, could only lift and carry up to 10 pounds occasionally, and had moderate limitations in her ability to use her fingers, hands, and arms. Tr. 897-98.

However, as the ALJ pointed out, both Dr. Osborne's and Dr. Pulcino's treatment notes conflict with their highly restrictive opinions. The doctors indicated in their notes that Plaintiff could rise from her chair and ambulate without difficulty while carrying her infant in her carrier and could lift and move her daughter in her infant car seat. Tr. 960, 69. Additionally, while Dr. Osborne's opinion stated that Plaintiff had moderate limitations with her arms, hands, and fingers, in that same opinion, she explicitly indicated that she had not assessed Plaintiff's ability to reach, handle, or finger. Tr. 897-98. Dr. Osborne's treatment notes also indicated that Plaintiff

6

complained about the disability paperwork offered by Dr. Pulcino and waited for Dr. Osborne for over two hours one day so that they could complete the medical source statement "together."[3] Plaintiff told Dr. Osborne that she could only sit for less than one hour a day and Dr. Osborne accepted this assessment. Tr. 957. The ALJ was justified in giving this opinion little weight. *See Polynice v. Colvin*, 576 F.App'x 28, 31 (2d Cir. 2014) (summary order) (an ALJ may reject an opinion that is nothing more than a provider's "recording of [the claimant's] own reports of pain.").

Finally, another treating physician, Dr. Prity Rawal, opined that Plaintiff could sit for four hours, stand and/or walk for four hours, occasionally lift and carry up to 50 pounds and frequently lift and carry up to 20 pounds, and had no manipulative limitations, but would be frequently distracted by pain, would need to take two to three unscheduled breaks of at least 20 minutes each throughout the workday, and would be absent from work at least twice a month. Tr. 993-97. The ALJ gave this opinion partial weight, noting that it understated some limitations and overstated others. For example, the ALJ found (in Plaintiff's favor) that there was no basis for Dr. Rawal's finding that she could occasionally lift and carry up to 50 pounds. The ALJ also noted that Dr. Rawal's mental limitations were unsupported by any examination findings, which typically noted normal mental status results. Tr. 284-88, 1423, 1427, 1431, 1435, 1439, 1442.

The ALJ also appropriately relied on other factors to support her decision to give less than controlling weight to Plaintiff's treating sources' opinions. *See Melissa S.*, 2019 U.S. Dist. LEXIS 6212, at *19-20 (when plaintiff alleges pain that is not objectively verifiable, an ALJ should consider evidence of daily activities, medication, and the causes of pain).

---

[3] It appears that Dr. Pulcino and Dr. Osborne worked together at Culver Medical Group. Dr. Pulcino was the attending physician and Dr. Osborne was the resident physician. Tr. 957. Dr. Osborne apparently reviewed paperwork that Dr. Pulcino had filled out and went over it with Plaintiff.

7

For example, the ALJ noted that Plaintiff's treating sources repeatedly counseled her to make lifestyle changes to improve her symptoms, including by quitting smoking, exercising daily, and seeking mental health treatment, but that Plaintiff failed to consistently take these measures and was, at times, resistant to treatment. Tr. 284-290, 298, 1232, 1235-36, 1509, 1523-29.

The ALJ also considered Plaintiff's daily activities. To be sure, there was evidence that Plaintiff had limitations here. For example, she testified that she had trouble caring for her three children and performing household chores and that she received help with these activities from her children's father; that she could not take public transportation; and that she could only drive short distances. Tr. 130, 150, 154, 284. But she also admitted at a consultative examination that she cooked daily, cleaned once a week, did laundry weekly, and managed her own daily self-care. Tr. 861. At another consultative examination, she reported that she spent her days taking care of her children and enjoyed helping them with their homework. Tr. 864.

Additionally, the ALJ considered the causes of Plaintiff's pain. One doctor noted that her symptoms might be caused by hyperventilation rather than a neurological disease. Tr. 881. Another doctor opined that there was a strong psychological component to her pain, Tr. 1506, and advised her to seek mental health treatment and do physical therapy, but she was unhappy with this advice. Tr. 1509. Dr. Osborne "wonder[ed] if her diagnosis is truly fibromyalgia." Tr. 928.

The ALJ also cited opinion evidence from other sources. For example, consultative examiner Dr. Marisela Gomez opined that Plaintiff could frequently lift and carry up to 20 pounds; sit for one hour at a time, up to six hours a day; stand for one hour at a time, up to one hour a day; walk for 30 minutes at a time, up to one hour a day; occasionally reach, handle, finger, feel, and push/pull; frequently use her feet to operate controls; occasionally climb stairs, ramps, ladders,

and scaffolds; and balance, stoop, kneel, crouch, and crawl. Tr. 1012-17. The ALJ's RFC is consistent with this opinion.

Accordingly, the Court finds that the ALJ gave appropriate reasons for discounting Plaintiff's treating sources' opinions and cited substantial evidence to support her evaluation.

### B. Plaintiff's Credibility

Plaintiff also argues that the ALJ erred in evaluating her credibility and improperly judged her character instead of comparing her subjective complaints to the objective evidence.

"When fibromyalgia is alleged, the credibility of a claimant's testimony regarding her symptoms must take on substantially increased significance in the ALJ's evaluation of the evidence." *Soto v. Barnhart*, 242 F. Supp. 2d 251, 256 (W.D.N.Y. Jan. 13, 2003). Here, the ALJ properly considered Plaintiff's credibility by citing several inconsistencies that directly bore on the nature and severity of her symptoms.

For example, the ALJ noted that Plaintiff testified that her children's father helps her care for the children, but she also told a provider that he only visits because he is interested in her, not the children, and "doesn't help take care of them." Tr. 807. The ALJ pointed out that Plaintiff had presented to Strong Memorial Hospital solely to obtain a letter stating that she is 100 percent disabled, even though this was contrary to her providers' opinions and was "deemed inappropriate." Tr. 299, 788, 820. On more than one occasion, she exhibited inappropriate behavior at the hospital when unhappy with her treatment or not given the pain medication she sought, such as by swearing at hospital staff and throwing a pen at a nurse's face. Tr. 1235, 1524. Multiple providers noted that she might be malingering. Tr. 1235, 1528. One provider indicated that Plaintiff demonstrated a limited range of motion upon examination, yet had no problem picking up her large purse. Tr. 821. She also inconsistently disclosed her drug usage: for example,

9

she tested positive for cocaine and marijuana in 2015 while undergoing evaluation for a possible seizure despite telling her treatment providers that she used no drugs. Tr. 1281.

In sum, the Court finds that the ALJ appropriately evaluated the opinion evidence of record and that her RFC was supported by substantial evidence. *See Karen M. v. Comm'r of Soc. Sec.*, No. 3:17-CV-893 (ATB), 2018 U.S. Dist. LEXIS 165794, at *30 (N.D.N.Y. Sep. 27, 2018) (finding that ALJ's credibility determination was supported by substantial evidence where he recognized plaintiff's fibromyalgia and made a credibility determination based on factors beyond clinical test results, including medication and daily activities); *Rivera v. Berryhill*, No. 19-cv-2006 (BMC), 2019 U.S. Dist. LEXIS 222530, at *6, 10 (E.D.N.Y. Dec. 28, 2019) (holding that even though plaintiff had fibromyalgia, the ALJ "was not required to defer to plaintiff's treating physician's opinion when his prior notes undermined his subsequent opinion and was also contradicted by substantial medical evidence in the record" and that "the ALJ was not required to credit plaintiff's testimony about the severity of her pain and the functional limitations it caused.").

## CONCLUSION

For the reasons stated, Plaintiff's Motion for Judgment on the Pleadings (ECF No. 14) is DENIED, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 16) is GRANTED, and Plaintiff's Complaint (ECF No. 1) is DISMISSED WITH PREJUDICE. The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: February 7, 2020
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court